# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Lance Andrew Williams,

                           Plaintiff,         Case No. 17-cv-11043

v.                                            Judith E. Levy
                                              United States District Judge
Commissioner of Social Security,
                                              Mag. Judge Elizabeth A. Stafford
                           Defendant.

_____/

## ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [11]

On June 11, 2018, Magistrate Judge Elizabeth A. Stafford issued a Report and Recommendation ("R & R") recommending the Court deny plaintiff's motion for summary judgment (Dkt. 9), grant defendant's motion for summary judgment (Dkt. 10), and affirm the Commissioner's decision to deny plaintiff benefits under the Social Security Act. (Dkt. 11.) On June 20, 2018, plaintiff filed two timely objections to the R & R under Fed. R. Civ. P. 72(b)(2) and E.D. Mich. L.R. 72(d). Plaintiff objects to the Magistrate Judge's recommendation that the ALJ properly weighed the medical opinions and her determination of plaintiff's

residual functional capacity ("RFC"). (Dkt. 12-1 at 1-11.) He also objects to the Magistrate Judge's recommendation that plaintiff's testimony was not credible.[1] (Dkt. 12-1 at 11-13.)

Plaintiff's objections are without merit, and accordingly the R & R is adopted, plaintiff's motion for summary judgment is denied, defendant's motion for summary judgment is granted.

## I.    Background

The Court adopts by reference the background set forth in the R & R, having reviewed it and found it to be accurate and sufficiently thorough.  (Dkt. 11 at 2.)

## II.    Legal Standard

Under Eastern District of Michigan Local Rule 72.1(d), objections to a Magistrate Judge's ruling must:

---

[1] The bulk of plaintiff's objections are largely a restatement of the arguments he presented in his summary judgment motion (Dkt.10), which are not appropriate or sufficient under E.D. Mich. L.R. 72(d). Objections are not "a second opportunity to present the argument already considered by the Magistrate Judge." *O'Connell v. Comm'r of Soc. Sec.*, No. 14-13690, 2016 W.L. 537771 at *1 (E.D. Mich. Feb. 11, 2016) (citation omitted). Plaintiff also raises certain arguments that were not raised before the Magistrate Judge, which are similarly not appropriate under E.D. Mich. L.R. 72(d). *Id.* at *1. The Court will review *de novo* the portions of the R & R that are not mere recitations of his summary judgment brief, or new arguments not previously raised before the Magistrate Judge.

(A) specify the part of the order, proposed findings, recommendations, or report to which a person objects; and
(B) state the basis for the objection."

E.D. Mich. L.R. 72.1(d)(1).

The Court reviews *de novo* those parts of the R & R to which the party has timely objected, and may accept, reject, or modify the recommended disposition, receive further evidence, or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

The Court's review of a determination of the Administrative Law Judge ("ALJ") "is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers*, 486 F.3d at 241). In deciding whether to affirm the ALJ's decision, "it is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record." *Rogers*, 486 F.3d at 241.

## III. Analysis

## A. Objection No. 1

Plaintiff's first objection to the R & R is that it adopts both the ALJ's medical-opinion credibility determinations and the ALJ's determination of plaintiff's RFC. (Dkt. 12-1 at 1-11.) In sum, plaintiff argues the only medical opinions in the record were those of his two treating physicians, Dr. Maria Goleba and Dr. Todd Lininger. (*Id*. at 5-6.) By declining to afford either opinion significant weight, plaintiff argues, the ALJ ignored medical evidence supporting a disability by substituting a lay opinion. (*Id*.) Thus, plaintiff argues, the ALJ's RFC determination is unsupported by any on-point medical evidence. (*Id*. at 8.)

Generally, ALJs give controlling weight to medical opinions from treating sources regarding the nature and severity of the claimant's condition. 20 C.F.R. §404.1527(c)(2) (2018). However, when the ALJ does not give the treating source's opinion controlling weight, the ALJ must "give good reasons" why not. *Id*. There are six regulatory factors to consider in weighing medical opinions: (1) length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of

the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6) (2018), 416.927(c)(2)-(6) (2018). There is no *per se* rule requiring an articulation of each of the six regulatory factors. As long as the ALJ's decision "fully describe[s] the reasoning for discounting [the treating physician's] opinion," it is sufficient. *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010); *and see Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (explaining the regulations require only "good reasons for the weight given to the treating source's opinion[,] not an exhaustive factor-by-factor analysis."). The reasons must be "supported by the evidence in the case record" and "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 at 476 (6th Cir. 2003). "[I]f substantial evidence supports the ALJ's decision, [this Court] defer[s] to that finding 'even if there is substantial evidence in the record that would have supported an opposite

conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

### 1. Dr. Goleba

The ALJ declined to give Dr. Goleba's November 14, 2013 medical source opinion full weight as follows:

> The treating source opinion of Dr. Goleba of November 14, 2013 has not been given full weight because the opinion is not supported by the clinical findings, the diagnostic test results, or the history of conservative treatment. The findings reported on examination by Dr. Goleba (and other examining sources) are not indicative of the extensive limitations or inability to perform even a narrow range of sedentary work described in her opinion. As discussed above, the clinical findings recorded by the doctor consistently were within normal limits, and the treatment was conservative.

(Dkt. 6-2 at 25 (internal citations omitted).)

The ALJ also declined to give Dr. Goleba's September 8, 2014 and October 2, 2014 opinions significant weight as follows:

> The undersigned does not give significant weight to the September 8, 2014 and October 2, 2014 opinions of Dr. Goleba indicating that the claimant was unable to engage in even sedentary work and that he was totally disabled with disability lasting lifelong.

(Dkt. 6-2 at 27 (internal citations omitted).)

Substantial evidence supports the ALJ's determination regarding the consistency of Dr. Goleba's November 14, 2013, September 8, 2014, and October 2, 2014 medical opinions with the record as a whole. The record shows the following:

- Plaintiff established care with Dr. Goleba as his primary care physician on August 15, 2013. (Dkt. 6-7 at 105.) For his first three visits, on August 15, 2013, September 23, 2013, and November 14, 2013, his physical examination results were normal. (*Id*. at 105-107, 102-104, 99-101.)

On November 14, 2013, Dr. Goleba provided plaintiff with a multiple medical questionnaire, which contains the first medical opinion in question. (Dkt. 6-7 at 157.) She diagnosed plaintiff with congestive heart failure. She estimated his pain and fatigue level at eight out of ten, and noted his groin and leg pain as chronic. (*Id*. at 158-59.) She estimated plaintiff's ability to work at a competitive five-day-a-week work environment on a sustained basis, indicating he could sit for zero to one hour, stand/walk for zero to one hour, her medical recommendation that plaintiff not sit continuously in a work setting, that he get up and move around once every 30 minutes, not sit again for five minutes, and not continuously stand/walk. (*Id*. at 159-160.) She indicated he can frequently lift and carry zero to five pounds, and could occasionally lift

five to ten pounds. (*Id.* at 160.) She noted a "marked" limitation in his upper extremities. (*Id.* at 160-161.) She also indicated he would be absent from work "more than three times a month" and require unscheduled breaks at least once per hour. (Dkt. at 161-62.) His treatment record continues as follows:

- Plaintiff's next five visits to Dr. Goleba on January 16, 2014, May 28, 2014, April 17, 2014, May 17, 2014, and August 11, 2014 again showed normal physical examination results. (*Id.* at 96-98, 86-88, 89-92, 93-95, 79-85.)

On September 8, 2014, Dr. Goleba wrote a letter containing the next questioned medical source opinion. The letter stated plaintiff was suffering from complications of a 1997 vasectomy, including right femoral nerve damage, RSD, chronic pain, and limited use of his right lower extremity. She opined, due to his complications "patient is totally disabled."[2] (Dkt. 6-8 at 101.)

- On September 11, 2014, plaintiff visited Dr. Goleba and his physical examination results were normal. (*Id.* at 172-176.)

---

[2] The determination of whether a person is "disabled" under the Social Security Act is reserved to the Commissioner, and not to plaintiff's treating doctor. (Social Security Ruling 96-5p.) Plaintiff acknowledges this in his objection. (Dkt. 12-1 at 8.)

On October 2, 2014, Dr. Goleba provided the third questioned medical source opinion when she provided plaintiff with paperwork for SSI. (*Id*. at 178.) All physical examination results were normal, except Dr. Goleba found plaintiff's right abdominal wall was "tender on palpitation," and she found "r[ight] leg weakness limited walking limping wearing cane 50% of time." (*Id*. at 179-180.) Dr. Goleba stated under the "Plan" portion of the medical form: "totally disabled prognosis poor 80% limitation of daily activity unable to engage in even sedentary work his disability will last life long." (*Id*. at 180.) Plaintiff's treatment record continued as follows:

- On his next seven visits to Dr. Goleba on October 24, 2014, May 19, 2015, May 29, 2015, September 25, 2015, October 23, 2015, and February 1, 2016, his physical examination results were again normal. (*Id*. at 181-184, 192-195, 202-205; Dkt. 6-8 at 102-105, 110-114, 116-120.)

Plaintiff argues the ALJ cannot ignore evidence supporting a disability while relying on other normal findings in the record. (Dkt. 12-1 at 5.) However, the ALJ did not discredit Dr. Goleba's treatment records altogether. The ALJ was not required to expressly cite every record individually. *See Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011). The ALJ thoroughly examined plaintiff's records of visits to

Dr. Goleba for 2013 through 2015, noted his groin and leg pain, chest pain, joint pain, back pain and other medical issues presented at his appointments. (Dkt. 6-2 at 25-29.) The ALJ reviewed the entire medical record, and found plaintiff's physical examination results from 2013, 2014 and 2015 were generally within normal limits. These examination results were not consistent with the November 11, 2013, September 8, 2014 and October 2, 2014 opinions. Thus, the ALJ evaluated the entire record and cited numerous clear reasons for the determination not to give Dr. Goleba's November 14, 2013, September 8, 2014 or October 2, 2014 opinions significant weight.

Plaintiff points to evidence of his conditions for which he has been treated, and argues such evidence should support a different decision on the weight given to Dr. Goleba's medical source opinions. (Dkt. 12-1 at 2.) But it is not the Court's role to re-weigh the evidence and substitute its own judgment for that of the ALJ, or otherwise resolve conflicts in the evidence *de novo*. *See Brainard v. Sec'y. of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989) ("The scope of our review is limited to an examination of the record only. We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence.") The ALJ's

opinion that Dr. Goleba's medical source opinions should not be given significant weight based on their inconsistencies with normal findings in clinical physical examinations is supported by substantial evidence in the record.

## 2. Dr. Lininger

The ALJ declined to give Dr. Lininger's November 3, 2014 medical source opinion significant weight as follows:

> The undersigned does not afford significant weight to the November 3, 2014 opinion of Dr. Lininger. The opinion is not supported by the clinical findings noted on the examination, the diagnostic test results reported, or the history of conservative treatment, with positive response to medications and no adverse side effects reported. These factors are not indicative of the limitations or inability to perform even a narrow range of light work described in this opinion.

(Dkt. 6-2 at 28 (internal citations omitted).)

The ALJ also declined to give Dr. Lininger's November 2, 2015 opinion significant weight as follows:

> The undersigned does not afford significant weight to the November 2, 2015 opinion of Dr. Lininger. The November 2015 opinion is not supported by the clinical findings of record, the diagnostic test results, or the history of conservative care. The treatment records and medical findings are not indicative of the limitations described by Dr. Lininger in this opinion.

(Dkt. 6-2 at 29 (internal citations omitted).)

Substantial evidence supports the ALJ's determination regarding the consistency of Dr. Lininger's November 3, 2014 and November 2, 2015 medical source opinions with the record as a whole. The record shows the following:

- On February 11, 2013, plaintiff was treated for hip and groin pain by Dr. Lininger, a pain care specialist. He reported adequate pain relief at a level of three-to-five out of ten with medications, and reported that rest, lying down and medications helped his pain. (Dkt. 6-7 at 19-22.)

- On May 13, 2013, he was seen again and reported his chief complaint as hip and groin pain, the level of which remained at three out of ten with medications. (*Id.* at 23-26.)

- On September 9, 2013, plaintiff was seen for a follow-up, and reported his life changes since coming to Dr. Lininger's clinic as "better," with "fair" overall pain relief, and reported "meds remain helpful." (*Id.* at 29-32.)

- On December 2, 2013, plaintiff reported "he is getting better. He states the pain is improved with the medications." (*Id.* at 37-41.)

- On February 24, 2014, plaintiff reported he was "stable overall," with the hip and groin pain continuing "but well controlled with medications." He also reported "no side effects from medications." (*Id.* at 42-46.)

- On May 19, 2014, plaintiff reported he "thinks his pain is pretty well controlled." (Id. at 47-48.)

- On September 15, 2014, plaintiff reported an increase in pain "after cutting down on main meds as required by ins[urance] carrier." However, there were "no other acute changes." (Id. at 43-47.)

- On November 3, 2014, plaintiff reported a panic attack, and pain at a four-to-five out of ten. He complained of extreme constipation, numbness, anxiety and difficulty sleeping. However, Dr. Lininger also reported plaintiff had "5/5 streng[th]." (*Id*. at 48-52.)

On November 3, 2014, Dr. Lininger provided the first medical source opinion in question on an impairment questionnaire. (Id. at 146.) In it, Dr. Lininger stated he sees plaintiff every two to three months, and plaintiff is diagnosed with right ilionguinal neuralgia, osteoarthritis, chronic pain syndrome, and opioid tolerance." (*Id*. at 146.) He stated plaintiff's ongoing impairments were expected to last at least twelve months. He stated, in an eight- hour workday, plaintiff could perform a job in a seated position for less than one hour. (*Id*. at 148.) He also stated that plaintiff could perform a job in a standing and/or walking position for less than one hour. (*Id*.) Further, plaintiff would have to avoid continuous sitting for an eight-hour work day, get up and move around

three times per hour, and wait approximately 20 minutes before returning to a seated position. (*Id*.) Dr. Lininger stated plaintiff would experience pain, fatigue, and other symptoms severe enough to interfere with his concentration frequently (from one-third -to two-thirds of an 8-hour day). (*Id*. at 149.) Plaintiff would require unscheduled breaks three times per hour for over 20 minutes each time, and would miss work more than three times a month. (Id. at 159-150.)

Plaintiff's treatment record continues as follows:

- On February 9, 2015, plaintiff reported a seven out of ten pain scale score when medications were being used. He also stated he had foot and calf pain, with no specific diagnosis and no EMG. (Dkt. 6-8 at 53-57.)

- On April 6, 2015, plaintiff reported he was "stable." His chief complaints were foot pain and groin pain, and described his overall pain relief as "good" at a four-to-five out of ten on the pain scale. (*Id*. at 59-62.)

- On June 8, 2015, plaintiff reported he was "getting by" with his pain medications and could tolerate a decrease in medications. (*Id*. at 67.)

- On August 3, 2015, plaintiff reported a pain score of four out of ten. He had normal ambulation "without assistive device" and normal standing balance. During his physical exam of his musculoskeletal lumbar spine, he also had "tenderness over

paraspinal muscles overlying the facet joints on both sides" on palpitation. (Dkt. 6-8 at 80-83.)

- On October 5, 2015, plaintiff reported a pain score of three out of ten. He reported "no new complaints or [side effects to meds." He reported, "current medications are helpful in decreasing pain and the medications have improved overall quality of life." (*Id*. at 77-80.)

On November 2, 2015, Dr. Lininger provided the second medical opinion in question, when he wrote a letter stating plaintiff "is only capable of sitting up to one hour and standing/walking up to one hour, total, in a competitive eight-hour work environment." (Dkt. 6-8 at 91.) Dr. Lininger recommended plaintiff "not sit continuously" and that he "get up and move around 3 times per hour, and would require approximately 20 minutes of rest before returning to seated work." He noted plaintiff is "markedly limited bilaterally in his ability to grasp, turn and twist objects; use his hands/fingers for fine manipulations; and use his arms for reaching, including overhead." (*Id*.) Further, he stated plaintiff's "pain, fatigue, or other symptoms are frequently severe enough to interfere with attention and concentration, and it is estimated that he would miss work more than three times a month due to his impairments or treatment." (*Id*.) Finally, Dr. Lininger noted his opinions from his

November 3, 2014 Impairment Questionnaire "remain accurate to date." (*Id.*)

The ALJ correctly found Dr. Lininger's records reflect numerous normal findings, with pain overall well-controlled by medications. Although there are records of plaintiff's pain scale reaching seven out of ten, there are many records with a pain scale of three, four, and five out of ten. The ALJ correctly found Dr. Lininger's opinions on November 3, 2014, and November 2, 2015, were not consistent with overall clinical findings on examination, the diagnostic test results reported, or the history of conservative treatment. Again, it is not the Court's role to re-weigh the evidence, even when there is evidence that could support a different outcome. *Blakley*, 581 F.3d at 406. Accordingly, the ALJ's opinion that Dr. Lininger's medical source opinions should not be given significant weight based on their inconsistencies with normal findings in clinical physical examinations is supported by substantial evidence in the record.

### 3. Residual Functional Capacity Determination

Plaintiff's Objection 1 also includes his objection to the ALJ's RFC finding that plaintiff could do light work. Plaintiff argues the ALJ's RFC

finding is not based on any medical evidence since the ALJ declined to give significant weight to certain opinion statements of Drs. Goleba and Lininger. (Dkt. 21-1 at 7-8.) Plaintiff's argument is not persuasive.

Plaintiff argues the ALJ's RFC determination is invalid because no physician opined plaintiff could do light work. (*Id.*) Rather, plaintiff argues, the ALJ made an impermissible layperson's medical determination. (*Id.*) It is well-established that the ALJ cannot not "play doctor" and make their own independent medical findings. *See Simpson v. Comm'r of Soc. Sec.*, 344 Fed. App'x 181, 194 (6th Cir. 2009). But that is not what the ALJ did here.

The ALJ found the preponderance of the evidence supports plaintiff's work-related limitations to do no more than light work. (Dkt. 6-2 at 33.) In doing so, the ALJ relied on objective and clinical medical findings in the record, including those from Dr. Goleba and Dr. Lininger, despite not giving specific enumerated opinions of each doctor significant weight. The ALJ discussed plaintiff's medical records in depth. (Dkt. 6-3 at 24-29.) The ALJ analyzed and weighed both clinical findings within normal limits and plaintiff's presentation of hip and groin pain, occasional sleep difficulties, anxiety, headaches, shortness of breath, and

foot numbness. (*Id.*) Thus, the ALJ's RFC determination is based on substantial, clearly explained evidence.

Additionally, the Sixth Circuit has stated an ALJ need not base an RFC finding on a physician's on-point opinion so long as substantial evidence, including objective medical evidence, supports the decision. *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. App'x 719, 728 (6th Cir. 2013) ("[T]he ALJ was not required to base her determination on a medical opinion, and substantial evidence, including objective medical evidence, supported her decision."). Despite the lack of directly on-point medical opinions, the ALJ's RFC determination that plaintiff can perform light work is supported by substantial evidence in the record as a whole. Accordingly, plaintiff's first objection is overruled.

### B.    Objection No. 2

Plaintiff's second objection is that the Magistrate Judge improperly adopted the ALJ's determination regarding plaintiff's credibility. (Dkt. 12-1 at 11-13.)   Specifically, plaintiff suggests the ALJ's credibility determination is inconsistent with the evidence in the record.

Credibility determinations are for the ALJ, and not the reviewing court, to evaluate. *Rogers*, 486 F.3d at 247. Even so, the ALJ's credibility

determination "must find support in the record." *Id*. Whenever a plaintiff's complaints regarding their symptoms, intensity or persistence are not supported by objective medical evidence, the ALJ must make a credibility determination "based on the entire case record." *Id*.

The ALJ questioned plaintiff's credibility as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Dkt. 6-2 at 32.)

Specifically, the ALJ relied on plaintiff's own statements that he "is able to perform some household chores, shop on occasion, drive and maintain social contacts." (Dkt. 6-2 at 32.) The ALJ determined plaintiff "has received treatment for his impairments that is essentially conservative in nature." (*Id*.) And the ALJ emphasized Dr. Lininger "consistently noted 'good' and 'adequate' response to medications, with no adverse side effects reported." (*Id*.)

The ALJ also emphasized the objective medical evidence, normal clinical examination findings, including the evidence from Dr. Goleba

and Dr. Lininger in finding plaintiff's own statements were not entirely credible. (Dkt. 10-2 at 29-32.)

Plaintiff's objection also argues his response to treatment with strong narcotic medications is inconsistent with the ALJ's finding that he does not have a disability. But, as the R & R correctly states, medications alone are not contrary to the ALJ's determination that plaintiff's treatment was conservative, and conservative treatment is often found to be inconsistent with disabling impairments. (Dkt. 11 at 22.) Accordingly, the ALJ's credibility determination is supported by substantial evidence in the record as a whole, and will not be disturbed.

## IV. Conclusion

For the reasons set forth above, the Court ADOPTS the Magistrate Judge's Report and Recommendation (Dkt. 11), plaintiff's motion for summary judgment is DENIED (Dkt. 9), defendant's motion for summary judgment is GRANTED (Dkt. 10), and the ALJ's decision is AFFIRMED.

IT IS SO ORDERED.

Dated: August 29, 2018          s/Judith E. Levy
Ann Arbor, Michigan             JUDITH E. LEVY
                                United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 29, 2018.

s/Shawna Burns
SHAWNA BURNS
Case Manager
